WATSON, Judge.
Plaintiff, Cardean, Inc., has appealed from a trial court judgment denying its claim for damages allegedly resulting from the delay of defendants, Jack Y. Canon and his wife, Irma Josette Regard Canon, in complying with a buy and sell agreement. Cardean had received a prior judgment May 21,1975, granting it specific performance of the contract for the sale of two tracts of immovable property from the Canons to Cardean.
The Canons have answered the appeal, contending that Cardean’s appeal is frivolous and has prevented them from investing the proceeds of the prior judgment. The Canons ask damages and attorney’s fees.
FACTS
The original “contract to buy and sell” dated March 19, 1974, describes two tracts of land by their boundaries, one containing 79.86 acres, more or less, and the second containing 72.81 acres. It is executed on behalf of Cardean, Inc. by Carol J. Aymond, Jr. The consideration is stated to be $800 per acre for the cleared land and $300 per acre for the wooded land. The agreement recites a deposit of $15,000 by the prospective buyer, Cardean, Inc., to be applied to the purchase price and not constituting earnest money. The uncomputed balance was to be paid in cash on the day of sale, to be within 15 to 60 days depending on title requirements. The prospective sellers were Jack Y. Canon and Mrs. Irma Josette Regard Canon. The agreement states that “Rentals . . . for . . . 1974 will be payable to the buyer.”
The price to be paid under this agreement was litigated; the dispute was over the actual acreage involved, as well as the number of acres cleared and wooded. A prior judgment of this court concluded that summary judgment ordering specific performance was inappropriate since there was a genuine issue of material fact as to the price. See Cardean, Inc. v. Canon, 307 So.2d 818 (La.App. 3 Cir. 1975).[1] After a jury trial, a judgment ordered conveyance of the two tracts of land and fixed the consideration at $800 an acre for 103.86 acres of cleared land, and $300 an acre for 48.81 acres of wooded land, or a total of $97,731. This sum was $16,300 in excess of the amount which Cardean had been willing to pay, and interest was awarded on the differential. That judgment also ordered that a warranty deed be executed within thirty seven days and provided that, in case of default by the Canons, the judgment itself would be a conveyance of title to the property upon deposit by Cardean of the price, less payment of a mortgage indebtedness to Equitable Life Assurance Society of the United States. This mortgage is not mentioned in the buy and sell agreement. Cardean received possession of the property under this judgment on June 27,1975, when the money was deposited.
Cardean claims that it lost the 1975 crop on the property, worth $36,800 in sugar cane and soybeans, or, in the alternative, worth $11,200 in soybeans. Cardean also contends that the productivity of the cleared portion of the two tracts has diminished by $45,000 because noncultivation has resulted in the growth of weeds, grasses, and small trees. The tracts are referred to as the Lake Pearl property and the Highway 29 property.
*712 Cardean, Inc. has three stockholders: its president, Carol J. Aymond, Jr.; its secretary-treasurer, Carol J. Aymond, Sr.; and Arthur Aymond. The corporation is operated on an informal basis. The testimony of the junior and senior Aymonds about the damages claimed by the corporation is general and speculative. It is not related to the specific property in question. Aymond, Jr. admitted that Cardean’s records of farming operations are not broken down by tracts. Terry Aymond testified that he is currently farming the Lake Pearl property for Cardean and would have been willing to farm it in 1974 but was not asked to do so.
Jack Canon testified that he had an oral agreement with Cardean’s representative that: (1) his tenants would remain on the land; and (2) an agreement between Canon and a Mr. Dorsey (also oral) to clear the land would continue. These two stipulations, which Canon later understood Carde-an would not honor, as well as the dispute about the acreage and price, kept the property from being transferred, as agreed. Canon said he and his wife considered the $81,431 Cardean tendered to be inadequate.
ISSUES
The issues are:
(1) Is Cardean entitled to damages for the Canons’ delay in consummating the sale?
(2) Are the Canons entitled to damages for frivolous appeal?
CONCLUSION
The trial court concluded that the Canons’ failure to transfer the property to Cardean resulted from the parties’ mutual fault. We agree and affirm; neither party is entitled to damages.
Cardean bases its claim for damages on LSA-C.C. art. 2486:
“In all cases, the seller is liable to damages, if there result any detriment to the buyer, occasioned by the non-delivery at the time agreed on.”
This article is qualified by the following article, LSA-C.C. art. 2487:
“The seller is not bound to make a delivery of the thing, if the buyer does not pay the price, and the seller has not granted him any term for the payment.”
The full amount due was not tendered by Cardean until judgment was rendered after trial on the merits. The contract of sale was not perfected until then, because the price was undetermined. LSA-C.C. art. 2464 states:
“The price of the sale must be certain, that is to say, fixed and determined by the parties. * * * ”
Cardean and the Canons had a bilateral promise of sale or contract to sell, which was binding. See the analysis of the distinction between a contract of sale and a bilateral promise of sale in Bornemann v. Richards, 245 La. 851, 161 So.2d 741 (1964). The agreement provided for determination of the price by a stated formula, but the sale could not be concluded or perfected until the character of the acreage had been determined by a survey. No transfer of title to the property could take place until the price was known. Although the price was determinable and ultimately fixed, it depended on how many acres were wooded and how many cleared. Compare Clark v. Comford, 45 La.Ann. 502, 12 So. 763 (1893). The situation here is analogous to that contemplated by LSA-C.C. art. 2465.[2] Survey by a third person was essential to perfection of the sale. See Lee Lumber Co. v. Hotard, 122 La. 850, 48 So. 286 (1909) which applies LSA-C.C. art. 2458[3] to sale of timber.
*713 Cardean is not entitled to damages, as well as the specific performance previously obtained. Fontenot v. Manuel, 281 So.2d 156 (La.App. 3 Cir. 1973) is cited as authority for recovery of damages by Cardean. However, there is no proof that any fruits and revenues were obtained from the property by the Canons during the interim period. In fact, the Canons’ failure to cultivate the property is alleged as an item of damages. Cardean’s proposed use of the property and anticipated profits therefrom are speculative and cannot be recovered. Fontenot v. Manuel, supra; Doriocourt v. La-croix, 29 La.Ann. 286 (1877). There is no showing of fraud or bad faith on the part of the Canons. LSA-C.C. art. 1934.
We find no merit in the contentions asserted in the answer to the appeal; damages for frivolous appeal are not warranted under the circumstances.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs are assessed to plaintiff-appellant, Cardean, Inc.
AFFIRMED.

. Mr. Canon signs his name as shown herein. The spelling used in the previous case is incorrect.

. LSA-C.C. art. 2465:
“Art. 2465. The price, however, may be left to the arbitration of a third person; but if such person can not, or be unwilling to make the estimation, there exists no sale.”

. LSA-C.C. art. 2458:
“Art. 2458. When goods, produce, or other objects, are not sold in a lump, but by weight, by tale, or by measure, the sale is not perfect, inasmuch as the things so sold are at the risk of the seller, until they be weighed, counted or measured; but the buyer may require either the delivery of them or damages, if there be any, in case of non-execution of the contract.”